UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN A. MURPHY and<br>CYNTHIA S. MURPHY,<br><br>    Plaintiffs,<br><br>  vs.<br><br>CITY OF KOKOMO; KOKOMO POLICE<br>CHIEF TOM DINARDO, Individually and in<br>his Official Capacity; KOKOMO POLICE<br>ASSISTANT CHIEF JACK ADAMS,<br>Individually and in his Official Capacity;<br>TONY ARNETT, Individually and in his<br>Official Capacity; LARKIN FOURKILLER,<br>Individually and in his Official Capacity; and<br>FOURKILLER CONSULTING, INC.,<br><br>    Defendants. | 1:05-cv-0328-JDT-TAB |

**ENTRY ON DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Docket No. 19) AND PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (Docket No. 31)**[1]

Plaintiffs Steven A. Murphy ("Murphy") and Cynthia S. Murphy bring this action asserting claims pursuant to 42 U.S.C. § 1983, Indiana tort law, and the Indiana Constitution against the Defendants following a police shooting of Murphy by a Kokomo police officer on October 28, 2003. Currently before the court are the Defendants' Motion for Partial Judgment on the Pleadings and the Plaintiffs' Motion for Leave to File

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

First Amended Complaint. After carefully reviewing the parties' briefs and supporting materials, the court rules as follows:

**I.      BACKGROUND**

The Complaint alleges that on October 28, 2003, while staying in his sister's apartment located in the Cedar Run apartment complex in Kokomo, Indiana, Kokomo Police Department Special Weapons and Tactics ("SWAT") Unit Officer Tony Arnett (hereinafter "Officer Arnett") shot Murphy in the chest at close range. (Am. Compl. ¶ 17.) The Complaint also alleges that Defendant Tom DiNardo, Chief of Police for the City of Kokomo (hereinafter "Chief DiNardo"), Defendant Jack Adams, Assistant Chief of Police for the City of Kokomo (hereinafter "Assistant Chief Adams"), and Kokomo Police Department and SWAT Unit Officer Larkin Fourkiller (hereinafter "Officer Fourkiller") were present at the scene and were personally involved, acquiesced and directly participated in the shooting. (*Id.* ¶¶ 7-9.)

At the time of the shooting, Murphy was the subject of an arrest warrant issued in Brown County, Ohio, that related to three non-violent offenses that allegedly occurred in Ohio. (*Id.* ¶ 21.) The Complaint further alleges that Murphy was unarmed and posed no threat to the safety of SWAT unit members or other individuals, and that the Defendants could have taken him into custody by less dangerous means. (*Id.* ¶ 22.) Accordingly, the Complaint alleges that the Defendants acted unreasonably and used excessive force in effectuating the capture and arrest of Murphy, and they acted maliciously and sadistically for the purpose of causing harm to him. (*Id.* ¶ 24.)

Furthermore, the Complaint avers that Defendants City of Kokomo, Chief DiNardo, and Assistant Chief Adams knew, or should have known, of the dangerous propensities of members of the SWAT Unit, as well as the prior unreasonable use of excessive and deadly force by members of the SWAT Unit.  (*Id.* ¶ 25.)  It contends that Chief DiNardo and Assistant Chief Adams failed to adequately supervise, discipline and/or train members of the SWAT Unit concerning use of force.  Finally, the Complaint alleges that the City of Kokomo had a policy and/or custom of using excessive and unreasonable force in effectuating arrest and seizures.  (*Id.* ¶ 26.)

On March 8, 2005, the Plaintiffs filed suit against the Defendants.  Counts I through III of the Complaint allege violations of 42 U.S.C. § 1983: Count I alleges a violation by Officers Arnett and Fourkiller; Count II alleges a violation by Chief DiNardo and Assistant Chief Adams; and Count III alleges a violation by the City of Kokomo (Mayor James Troubaugh was also named as a defendant in Count III, but the parties have since agreed to his dismissal from the suit).  Counts IV through VIII involve state law claims against the Defendants.  On August 2, 2005, the Defendants moved the court for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On September 26, 2005, the Plaintiffs moved the court for leave to file a First Amended Complaint, and in addition they filed a response to the Defendants' motion for judgment on the pleadings.  On October 4, 2005, the Defendants filed their response in opposition to the Plaintiffs' motion for leave to amend their Complaint and their reply in support of their motion for judgment on the pleadings.  Finally, on November 4, 2005,

Plaintiffs filed their reply in support of their motion for leave to file the First Amended Complaint. The parties' motions are now ripe for the court's review.

## II.     LEAVE TO AMEND COMPLAINT

Before discussing the motion for judgment on the pleadings, the court must first address the Plaintiffs' motion for leave to file the First Amended Complaint, even though the Defendants' motion was filed prior to the Plaintiffs' motion. This is because if the court grants the Plaintiffs' leave to amend their Complaint, then the Defendants' motion will be treated as directed at the Amended Complaint, which would supersede the original Complaint. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). For this reason, the court must first determine whether to grant the Plaintiffs' leave to amend their Complaint.

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires," but leave to amend is not automatic. "In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court determined that leave to amend should be granted under [Rule] 15(a) unless there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993). The court must balance the *Foman* factors against any potential harm that could befall a moving party if leave is not granted. 3 James Wm. Moore et al., Moore's Federal Practice § 15.15(1) (3d ed. 2003).

The Defendants do not specifically address the *Foman* factors. Instead, they argue that the motion should be denied because it comes after the deadline established by the case management plan ("CMP"). The Plaintiffs filed the original Complaint on March 8, 2005. The CMP required that parties were to file any motions for leave to amend pleadings on or before August 8, 2005. But the Plaintiffs filed their motion for leave to amend on September 26, 2005, forty-nine days after the CMP deadline. Accordingly, the Defendants argue that the leave to amend should not be granted because the filing of the Plaintiffs' motion falls outside of the deadline agreed upon by the parties in the CMP.

While the deadlines established in the CMP generally should not be altered, the court may alter the deadlines for good cause shown. Fed. R. Civ. P. 16(b); S.D. Ind. L.R. 16.1(d). Here, after receiving and reviewing the Defendants' initial disclosures in August, 2005, the Plaintiffs concluded that there was adequate legal basis for adding factual allegations to the Complaint. Specifically, the Plaintiffs determined that the disclosures revealed that Chief DiNardo and perhaps Assistant Chief Adams were present at the scene of the shooting. The court finds this to be good cause to modify the CMP deadline in order to allow the Plaintiffs to amend their Complaint. First, the initial disclosures provided the Plaintiffs with information that they allegedly did not previously have, which information may suggest that Chief DiNardo and Assistant Chief Adams were present at the scene and involved with the shooting. The Plaintiffs allegedly did not have this information prior to the CMP deadline and they sought leave to add these factual allegations to the Complaint within a relatively short time after

receiving and reviewing the information. Second, the Plaintiffs do not seek to add any new counts to the Complaint. Instead, they seek to add factual allegations to counts that already exist in the original Complaint. As such, the Defendants cannot say that they are caught off-guard by new counts that they had not been preparing to defend. Finally, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Consequently, the court finds that there is good cause to modify the CMP and GRANTS leave to the Plaintiffs to file their First Amended Complaint.

### III.   PARTIAL JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), the Defendants move for judgment on the pleadings as to Count II against Chief DiNardo and Assistant Chief Adams individually, Counts IV and VIII as against Chief DiNardo, Assistant Chief Adams, Officer Fourkiller, and Officer Arnett individually, and Count VII against all Defendants. A defendant may use a Rule 12(c) motion after the pleadings are closed to raise Rule 12(b) defenses regarding procedural defects. *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993). When used in this manner, the court applies the same standard applicable to a Rule 12(b) motion. *Id.* The court accepts the facts alleged in the complaint in the light most favorable to the Plaintiffs, *see Guise v. BWM Mortg.*,

*LLC*, 377 F.3d 795, 798 (7th Cir. 2004), and may grant the Rule 12(c) motion "only when it appears beyond a doubt that the plaintiff[s] cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id.* (quotation omitted).

    A.    COUNT II - § 1983 CLAIMS AGAINST CHIEF DINARDO AND ASSISTANT CHIEF ADAMS

The Defendants argue that the Plaintiffs' § 1983 claims against Chief DiNardo and Assistant Chief Adams, in so far as they seeks individual liability from these Defendants, should be dismissed for lack of personal involvement. Alternatively, Chief DiNardo and Assistant Chief Adams claim qualified immunity against the § 1983 claims.

The Plaintiffs allege that Chief DiNardo and Assistant Chief Adams are individually liable for violating § 1983. An individual cannot be held liable for damages under § 1983 unless he or she was personally involved in the alleged constitutional deprivation. *See J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). "Although direct participation is not necessary, there must at least be a showing that the [defendants] acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer*, 327 F.3d at 594.

Here, the Amended Complaint alleges that both Chief DiNardo and Assistant Chief Adams were present on the scene, personally involved, acquiesced, and directly participated in the police shooting. (Am. Compl. ¶¶ 8-9.) Because the court must

accept the facts alleged in the pleadings in the light most favorable to the Plaintiffs, *see Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004), it rejects the Defendants' argument against § 1983 liability based on lack of personal involvement.

In the alternative, the Defendants contend that Chief DiNardo and Assistant Chief Adams are entitled to qualified immunity. "Qualified immunity protects government officials from monetary liability when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kitzman-Kelley v. Warner*, 203 F.3d 454, 457 (7th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The court utilizes a two-part inquiry in determining whether qualified immunity applies. *Id.* at 201. First, taken in the light most favorable to the party asserting the injury, the court must determine whether the facts alleged show that the Defendants' conduct violated a constitutional right. *Id.* If the allegations show the violation of a constitutional right, then the second step is to ask whether the right was clearly established. *Id.*

The Plaintiffs allege in the Amended Complaint that those individuals involved in the shooting of Murphy violated his rights protected under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[2] The Fourth Amendment

---

[2] The Plaintiffs are mistaken in claiming that Murphy's Eighth and Fourteenth Amendment rights were violated. At the time of the police shooting, the officers were attempting to seize or arrest Murphy. Because Murphy was not a convicted prisoner, the Eighth Amendment's prohibition on cruel and unusual punishment does not apply to him. *See Estate*

guarantees an individual's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. To state a constitutional violation under the Fourth Amendment, the Plaintiffs must allege that (1) Chief DiNardo's and Assistant Chief Adams's conduct constituted a "seizure," and (2) the seizure, if one occurred, was unreasonable. *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002).

It is clear from the Amended Complaint, which alleges that Chief DiNardo and Assistant Chief Adams authorized the use of deadly force and were personally involved in the shooting of Murphy, that the officers had seized Murphy. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (explaining that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"). The critical question is whether the seizure was unreasonable. This reasonableness inquiry involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). As such, this inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate

---

*of Cole v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996). Similarly, the Due Process Clause of the Fourteenth Amendment applies only to rights of a pretrial detainee. *See id.* Because Murphy was not a pretrial detainee, a claimed violation of the Due Process Clause cannot afford the Plaintiffs relief. The Plaintiffs' claims of constitutional violation will be evaluated under the Fourth Amendment because "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396-97). Finally, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quoting *Graham*, 490 U.S. at 397).

In applying the balancing test explained above, the Supreme Court has held that "a police officer may not seize an unarmed, nondangerous suspect by shooting him dead." Here, the allegations, which the court must accept as true at this stage in the proceedings, claim that Murphy was unarmed and posed no threat to the officers or to anyone else. The Amended Complaint further alleges that Chief DiNardo and Assistant Chief Adams authorized and were personally involved with the shooting of Murphy in the chest at close range. Although Murphy was fortunate to survive the shooting, the degree of force used by the officers came very close to "deadly force," and the court can infer from the allegations that the Defendants intended the force to kill Murphy. Because the reasonableness inquiry depends on a fact-sensitive examination of the constitutional violation, it can be difficult to resolve the issue as a matter of law at the pleading stage, where all the court has in making determination are the allegations found in the pleadings. However, based on the allegations of the Amended Complaint,

the court must find that Chief DiNardo and Assistant Chief Adams have violated Murphy's Fourth Amendment right to be free from unreasonable seizures, and that Murphy's right was clearly established. Therefore, Chief DiNardo and Assistant Chief Adams are not entitled to qualified immunity at this stage of the proceedings.[3] The Defendants' motion to dismiss the § 1983 claims against Chief DiNardo and Assistant Chief Adams will be DENIED.

### B. COUNTS IV AND VIII - STATE TORT CLAIMS AGAINST INDIVIDUAL DEFENDANTS

The Defendants argue that the Plaintiffs' state tort claims, Counts IV and VIII, as far as the claims seek recovery against Chief DiNardo, Assistant Chief Adams, Officer Fourkiller, and Officer Arnett, should be dismissed pursuant to the Indiana Tort Claims Act ("ITCA") because the individual defendants acted within the scope of their employment.

Under Indiana Code § 34-13-3-5(b), "[a] plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his or her employment." *Higgason v. State*, 789 N.E.2d 22, 29 (Ind. Ct. App. 2003) (citing Ind. Code § 34-13-3-5(b)); *see also Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) ("[The Act] allows government employees acting in the scope of their employment the freedom to carry out their duties without fear of litigation."). When

---

[3] Of course, this ruling does not preclude Chief DiNardo or Assistant Chief Adams from claiming qualified immunity at a future stage of the proceedings when and if the evidence demonstrates that they are entitled to the immunity.

a complaint itself alleges that individual defendants acted within the scope of their employment, then the state claims against the government employees are "barred." *Bushong*, 790 N.E.2d at 472. Indeed, "if the complaint alleges that a government employee acted within the scope of employment, then a motion to dismiss . . . would be the appropriate course of action." *Id.* at 472 n.4.

In their Amended Complaint, the Plaintiffs allege that Chief DiNardo, Assistant Chief Adams, Officer Fourkiller, and Officer Arnett "were acting . . . within the scope of their employment." (Am. Compl. ¶ 13.) Because the Amended Complaint alleges that the government employees acted within the scope of employment, the state claims that seek liability individually against these employees are barred by the ITCA and will be DISMISSED.

C. COUNT VII - STATE CONSTITUTIONAL CLAIMS AGAINST ALL DEFENDANTS

Count VII of the Amended Complaint alleges that the Defendants violated the Plaintiffs' rights under Indiana Constitution Article I, § 11. The Defendants contend that the court should dismiss Count VII because there is no implied private right of action for damages under the Indiana Constitution.

"Under the principles of *Erie v. Tompkins*, a federal court must apply the state law as declared by the highest state court or otherwise by the intermediate appellate court of the state." *See Kutsugeras v. Avco Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992) (quoting *Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir. 1987) (citing

*Erie v. Tompkins*, 304 U.S. 64 (1938))).  But Indiana courts have declined to address the question of an implied right of action under the Indiana Constitution.  *See, e.g.,Young v. Ind. Dep't Natural Res.*, 789 N.E.2d 550, 559 n.5 (Ind. App. 2003).  Thus, in exercising supplemental jurisdiction over this state law issue, the court is required to determine the issue presented as it believes the Indiana courts would under the circumstances.  *See Kutsugeras*, 973 F.2d at 1346 (citation omitted).

The courts in the Southern District of Indiana, including this court, have consistently held that there is no implied private right of action under the Indiana Constitution.  *See Raines v. Strittmatter*, No. 1:03-cv-01289-JDT-TAB, 2004 WL 2137634, at * 7 (S.D. Ind. June 29, 2004) (Tinder, J.); *Estate of O'Bryan v. Town of Sellersburg*, No. 3:02-cv-00238-DFH-WGH, 2004 WL 1234215, at *21 (S.D. Ind. May 20, 2004) (Hamilton, J.); *Malone v. Becher*, No. NA 01-101-C-H/H, 2003 WL 22080737, at *18-19 (S.D. Ind. Aug. 29, 2003) (Hamilton, J.); *Schreiber v. Lawrence*, No. 1:02-cv-1319-DFH, 2003 WL 1562563, at *6-7 (S.D. Ind. Mar. 4, 2003) (Hamilton, J.); *Bublitz v. Cottey*, No. IP 99-167-C-T/S, 2002 WL 31242499, at *5 (S.D. Ind. Aug. 8, 2002) (Tinder, J.); *Curry v. Consol. City of Indianapolis*, No. IP 00-1534-C-T/K, 2002 WL 655705, at *7 (S.D. Ind. Feb. 27, 2002) (Tinder, J.); *Willits v. Wal-Mart Stores, Inc.*, No. IP 99-0276-C-M, 2001 WL 1028778, at *15 (S.D. Ind. July 30, 2001) (McKinney, C.J.); *Baker v. Washington Bd. of Works*, No. IP 99-0642-C-T/G, 2000 WL 33252101, at *8 (S.D. Ind. June 8, 2000) (Tinder, J.); *Boczar v. Kingen*, No. IP 99-0141-C-T/G, 2000 WL 1137713, at *24-25 (S.D. Ind. Mar. 9, 2000) (Tinder, J.).  These cases provide two valid reasons supporting the decision not to recognize a private right of action.  First, this court has

reasoned that it was unlikely that the Indiana Supreme Court would recognize an implied right under the Indiana Constitution because Indiana courts have been hesitant to recognize implied rights of action under statutory law and also because the framers of the Indiana Constitution would not have intended to create such a right because they would have believed sovereign immunity to bar such action. *Raines*, 2004 WL 2137634, at *5-6. Second, the courts in the Southern District have reasoned that a federal district court must be cautious in determining whether a private cause of action exists under the Indiana Constitution:

> [R]ecognizing such an implied right to sue for damages under the Indiana Constitution would work a dramatic change in Indiana law, in the relationships between citizens and their state and local governments, and between those governments and their employees. If such a step is to be taken, it will need to be taken by the Indiana courts, not be a federal court whose duty is to apply existing Indiana law.

*Estate of O'Bryan*, 2004 WL 1234215, at *21. The court sees no reason to abandon the reasoning applied by this court, and others, in the cases cited above. Thus, the court declines to recognize an implied private right of action under the Indiana Constitution. The Plaintiffs' Count VII, which seeks liability from the Defendants for allegedly violating Article I, Section 11 of the Indiana Constitution, will be DISMISSED accordingly.

### IV.   CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Leave to File First Amended Complaint (Docket No. 31) is **GRANTED**. The Defendants' Motion for Partial Judgment

on the Pleadings (Docket No. 19) is **DENIED** in so far as it seeks to dismiss Count II against Chief DiNardo and Assistant Chief Adams.  However, the Defendants' motion is **GRANTED** in so far as it seeks the dismissal of Counts IV and VIII against Chief DiNardo and Assistant Chief Adams individually, and is **GRANTED** in so far as it seeks the dismissal of Count VII against all Defendants.  No judgment will be entered on the claims subject to dismissal by the rulings in this entry until the remaining claims have been resolved.

ALL OF WHICH IS ENTERED this 30th day of January 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Rosemary L. Borek
Stephenson Morow & Semler
rborek@stephlaw.com

Ronald C. Byal
P.O. Box 886
Kokomo, IN 46903

Peter H. Rosenthal
Law Office of Peter H. Rosenthal
atyrosenthal@aol.com

Ronald J. Semler
Stephenson Morow & Semler
rsemler@stephlaw.com

James S. Stephenson
Stephenson Morow & Semler
jstephenson@stephlaw.com

Magistrate Judge Tim A. Baker